IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ROSIE DAVIS, *et al.*                                                                      PLAINTIFFS

v.                                        Case No. 4:88-cv-04082

WILLIAM DALE FRANKS, *et al.*                                            DEFENDANTS

## <u>ORDER</u>

Before the Court is a Motion to Intervene and Declare Hope School District Unitary filed by the Arkansas Department of Education and Board of Education (collectively, "ADE and SBE" or the "Agencies"). ECF No. 211. The Agencies seek to intervene in this case pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. *Id.* The Agencies additionally seek a declaration that Hope School District ("HSD") has achieved unitary status and ask the Court to terminate the operative consent decrees. *Id.* Plaintiff Davis filed a response in opposition. ECF No. 216. HSD filed a response in opposition. ECF No. 219. The Agencies filed a reply in support of their motion. ECF No. 225. The Court finds the matter ripe for consideration.

## I. BACKGROUND

On August 5, 1988, this case was filed by African American individuals who were employed by or attended the Hope Public School District No. 1A in Hope, Arkansas. Plaintiffs sought to redress alleged racial discrimination regarding Hope's treatment of African American students and faculty. On November 16, 1989, the Court dismissed this case with prejudice subject to the terms of a consent decree executed by the parties (hereinafter the "1990 *Davis* Decree"). ECF Nos. 37, 38. When dismissing this case, the Court retained jurisdiction to reopen this action upon cause shown that the settlement had not been completed and that further litigation is necessary. ECF No. 37.

On January 8, 1990, the Court filed the 1990 *Davis* Decree on this case's docket.  The 1990

*Davis* Decree provides in relevant part that:

> [I]t is the intent of this Decree to remedy any past discrimination based upon race
> and to prevent any like discrimination from occurring in the future. Although this
> action is brought on behalf of named black individual pupils and staff, the parties
> hereby agree that this Decree shall be equally applied to all such students and staff
> now and hereafter within the Hope School District No. 1A.
>
> The Court, by consent of the parties, therefore enjoins, forbids and restrains the
> defendants from hereinafter engaging in any policies, practices, customs or usages
> of racial discrimination in any of its school operations including, but not limited to,
> faculty assignments, student assignments, and the treatment of black and other
> minority pupils within the school system.
>
> . . . .
>
> The Court shall have continuing jurisdiction of this Consent Decree in order to
> [e]nsure compliance with the spirit and terms of this Decree.

ECF No. 38, ¶¶ 3, 4, 21.

On September 13, 2022, upon the Joint Motion for Approval of Agreed Order Regarding

HDS's Magent School Program (ECF No. 204), the Court approved another consent decree that

authorized HSD to establish a magnet program within its schools, contingent upon the award of

federal grant funding (hereinafter the "2022 Magnet Order").[1]  ECF No. 206, 207.  The 2022

Magnet Order provides in relevant part:

> HSD is hereby authorized to proceed with its application for grant funding through
> the United States Department of Education's Office of Civil Rights ("OCR"), to
> implement the magnet program if grant funding is awarded, and to take all other
> actions necessary, reasonable, and appropriate to achieve those objectives.
>
> . . . .
>
> HSD is further directed to implement the magnet program in a manner that complies
> with the 1990 Consent Decree, specifically in that no student will be discriminated
> based upon race, and assignments will be made by lottery, in a "desegregated and
> integrated in fact" manner, not by "tracking" or "ability grouping."

---

[1] HSD is also subject to the Court's May 3, 2013 Order addressing board governance.  ECF No. 97.

2

. . . .

The Court will maintain continuing jurisdiction over this matter until it finds that HSD should be fully released from Court supervision.

ECF No. 206, ¶¶ 10, 13, 20; s*ee also* ECF No. 207.

The Agencies filed the instant motion arguing that it is no longer necessary for the Court to supervise HSD, and thus the Court should terminate "all consent decrees."  ECF No. 211, p. 1.  Further, because HSD has not yet sought termination of these decrees, the Agencies request that the Court allow them to intervene to seek termination themselves.  *Id.*  Plaintiff Davis and HSD oppose the motion.  ECF Nos. 216, 219.  The Agencies filed a reply in support of their motion.  ECF No. 225.

## II.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 24(a)(2), a timely motion for leave to intervene "shall" be granted "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."  *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1,* 738 F.2d 82, 84 (8th Cir. 1984).  In the Eighth Circuit, "a party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24."  *United States v. Metro. St. Louis Sewer Dist.,* 569 F.3d 829, 833 (8th Cir. 2009).  "The requirements for Article III standing are (1) injury, (2) causation, and (3) redressability."  *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.,* 759 F.3d 969, 974–75 (8th Cir. 2014); *Metro. St. Louis Sewer Dist.,* 569 F.3d at 833-34.  First, the prospective intervenor "must clearly allege facts showing an injury in fact, which is an injury to a legally protected interest that is 'concrete, particularized, and either actual or imminent.'" *Metro. St. Louis Sewer Dist.,* 569 F.3d at 834 (quoting *Curry v. Regents of the Univ. of Minn.,* 167 F.3d

3

420, 422 (8th Cir. 1999)).   Second, the party seeking to intervene must establish "a causal connection between the injury and the conduct complained of."   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   "[I]n other words, the intervenors alleged injury must be 'fairly traceable to the defendant's conduct.'" *Nat'l Parks Conservation Ass'n*, 759 F.3d at 975 (quoting *Metro. St. Louis Sewer Dist.,* 569 F.3d at 834).   Lastly, the prospective intervenor must establish that a "favorable decision will likely redress the injury." *Metro. St. Louis Sewer Dist.,* 569 F.3d at 834.   "Abstract injury is not enough." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983).

### III.   DISCUSSION

The Agencies argue that they are entitled to intervene because the "State must ensure that Arkansas's students receive a constitutionally adequate education."   ECF No. 212, p. 3.   The Agencies assert that although "the State has delegated some power over education policy to school districts, it retains the ultimate authority."   *Id.*   To support this assertion, the Agencies point to Ark. Code Ann. § 6-11-105(a)(1), which states that the SBE shall "[h]ave general supervision of the public schools of the state."   *Id.* at 3-4.   They further argue that "[c]onsent decrees like Hope's interfere with the State's authority by bringing in a third party: federal courts."   *Id.* at 4. Additionally, the Agencies argue that they cannot count on the school district to represent their interests as HSD, "rather than seek to free itself of judicial oversight," has "sought to expand the consent decrees" and "recently agreed to yet another consent decree." *Id.* at 5.   Thus, the Agencies argue, "to protect its sovereign interests and its taxpayers, the State must step in and do what Hope apparently will not."   *Id.*   Plaintiff Davis and HSD argue that the Agencies do not have Article III standing and have "not made the necessary showing to justify intervention of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure," and thus the Court should deny the Agencies' Motion to Intervene.   ECF No. 220, p. 10; ECF No. 217.   The Court agrees.

4

The Agencies have not established that they have Article III standing to intervene on behalf of HSD.  In fact, the Agencies never directly address their own Article III standing.  The Agencies argue that "Hope's consent decrees involve federal courts in education policymaking, which directly implicates the State's Interests" and that the "State has an obvious federalism interest in not having its education policy subject to federal court supervision."  ECF No. 225, pp. 1, 4.  The Agencies assert that their legally protected interest flows from Ark. Code Ann § 6-11-105(a)(1), which grants the State of Arkansas "general supervision" over the school districts, and the Rules Governing Standards for Accreditation of Arkansas Public School and School Districts 3-A.10 (2020).[2]  However, the Court finds that the Agencies' asserted interest is not particularized enough to establish an injury-in-fact in this case.  *See Sierra Club v. Entergy Arkansas LLC*, 503 F. Supp. 3d 821 (E.D. Ark. 2020) (finding that the Arkansas Attorney General's Consumer Utility Rate Advocacy Division (CURAD) and coalition of electric consumers failed to establish injury in fact necessary for standing to intervene based on alleged economic interest and injury, because injuries were speculative and because potential intervenors failed to establish that injuries from rate increases were sufficiently particularized, and not of the type shared by the general public); *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765 (5th Cir. 2023) (affirming district court's decision disallowing the State of Louisiana to intervene in a case involving student discipline issues because the State's asserted interest in the case was too vague to survive the standing requirements of Article III).  Simply stating an interest in the litigation does not establish Article III standing.[3] *United States v. Texas*, 599 U.S. 670, 677 (2023) ("A 'telling indication of the severe constitutional

---

[2] "If the Division is unable to verify the public school district's efforts to comply with the submitted detailed plan required by these Rules, the Division shall recommend to the State Board of Education whether the public school district should be placed on Accredited—Probation status in accordance with these Rules." https://adecm.ade.arkansas.gov/Attachments/Standards_for_Accreditation_(Effective_7-1-20)_155605.pdf.

[3] The Agencies' arguments present an overly expansive view of Article III standing.  By their logic, any state or state agency could intervene in federal litigation that involves issues of state law.

problem' with [a state's] assertion of standing to bring this lawsuit 'is the lack of historical precedent' supporting it." (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 505, (2010))).

The Agencies have not alleged facts showing an injury to a legally protected interest that is "concrete, particularized, and either actual or imminent." *Curry,* 167 F.3d at 422.  Because the Court finds that the alleged injury-in-fact is too speculative, it need not address the traceability or redressability factors.  Thus, the Court concludes that the Agencies have failed to establish Article III standing which is required for successful intervention.  Because the Court determines that the Agencies have not demonstrated standing, the Court finds that the Agencies' motion should be denied without reaching the merits of the requirements of intervention pursuant to Federal Rule of Civil Procedure 24(a).[4]

## IV.  CONCLUSION

For the reasons discussed above, the Court finds that the Agencies' Motion to Intervene and Declare Hope School District Unitary (ECF No. 211) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 29th day of March, 2024.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[4] Federal Rule of Civil Procedure 24(c) provides that "A motion to intervene . . . must state the grounds of intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  The Agencies address their failure to provide an accompanying pleading and point out that they filed a motion and accompanying brief, "precisely what [they] did when [they] intervened five years ago."  ECF No. 225, n. 1.  Further, the Agencies point out that they could not comply with Rule 24(c) and "file a new complaint or answer," because it is "unclear how the State would answer a three-decades-old, settled complaint—especially when that isn't what the State is litigating about."  The Court agrees and finds this reasoning illuminating, and it further supports the Court's decision to decline to let the Agencies intervene.  The Court further notes that the Agencies' previous Motion for *Limited* Intervention (ECF No. 142) was unopposed.